**BOARD OF EDUCATION OF the EAST WINDSOR REGIONAL SCHOOL DISTRICT, Appellant in No. 85-5717,**

v.

**Nelson DIAMOND and Lita Diamond (in Behalf of their infant son, Andrew DIAMOND), Appellants in Nos. 85-5745/46.**

**Nos. 85-5717, 85-5745 and 85-5746.**

United States Court of Appeals, Third Circuit.

Argued Oct. 17, 1986.

Decided Dec. 19, 1986.

David H. Coates (argued), Turp, Coates, Essl & Driggers, P.C., Hightstown, N.J., for East Windsor Regional School Dist.

Alfred A. Slocum, Public Advocate of New Jersey, David B. Harris (argued), Deputy Public Advocate, New Jersey Dept. of the Public Advocate, Trenton, N.J., Bruce Lubitz (argued), Warren, Goldberg, Berman & Lutitz, Princeton, N.J., for Nelson and Lita Diamond.

Before GIBBONS and BECKER, Circuit Judges, and FULLAM, District Judge.*

* Hon. John P. Fullam, Chief Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

The Board of Education of East Windsor Regional School District appeals, and the parents of a minor child—Andrew Diamond—cross appeal, from a final judgment declaring that the School District must pay Andrew Diamond's educational expenses in a residential placement on a full calendar year basis, ordering reimbursement of expenses incurred by his parents to date, and dismissing his parents' counterclaim for damages for injury to their son, for prejudgment interest, and for attorneys' fees. We affirm the judgment insofar as it declares that the School District must fund Andrew Diamond's education in a residential placement and orders reimbursement of expenses already incurred by such placement. We reverse and remand for further proceedings on the counterclaim.

### I.

### State and Local Proceedings

Andrew Diamond was born on February 16, 1971 with several congenital physical abnormalities. He has a neurological impairment which inhibits his ability to walk or to communicate. Because of these impairments he has special educational needs which were recognized when the School Board made his first placement at the Midland School, a private school for disabled children. Andrew Diamond continued at Midland School for a number of years. In September 1980, however, Midland School advised his parents that it was no longer able to provide an appropriate education for Andrew because his learning skills were declining and his behavior becoming counterproductive. Although the Midland School placement was determined to be inappropriate, the School Board continued it anyway.

Andrew Diamond's parents, meanwhile, requested a hearing before a classification officer of the New Jersey Department of Education. While a decision on that request was pending, the parents removed Andrew from the Midland School and placed him in Rhode Island's Behavior Research Institute in June, 1981. On July 31, 1981 the New Jersey Department of Education hearing officer determined that Andrew Diamond should be reclassified as neurologically impaired and trainably mentally retarded. He therefore ordered that a residential placement be made if no suitable day placement could be found.

In response to the Department of Education's order the School Board proposed placing Andrew in the Mercer Special Services School District (Mercer Special). The Mercer Special program is nonresidential, uses group instruction, and administers consequences for less than 15% of targeted behavior. At this time, Andrew was making remarkable progress at the Behavior Research Institute, which is residential, offers individual instruction, and administers consequences for targeted behavior much more frequently. The School Board, unfortunately, was not paying for the Behavior Research Institute placement. Therefore, the resultant financial hardship forced the parents to bring their child home after about five months. At home, Andrew's condition deteriorated because the School Board provided only 1 to 1½ hours of home instruction per day.

In response, Andrew's parents requested another hearing before the New Jersey Department of Education. After an extended hearing, the Department Classification Officer's May 18, 1983 order directed the Board both to continue Andrew Diamond's residential placement and to reimburse his parents for all of Andrew's residential placement expenses.

### II.

### District Court Proceedings

Throughout the proceedings before the New Jersey Department of Education, the School Board resisted any residential placement for Andrew Diamond. It reacted to the May 18, 1983 Department order by filing a complaint in the United States District Court for the District of New Jersey on June 13, 1983. The School Board

sought an order placing Andrew at Mercer Special and denying his parents reimbursement of costs incurred in Andrew's residential placement.[1]

In the proceedings before the New Jersey Department of Education the Diamonds were represented by the New Jersey Public Advocate. The Public Advocate entered an appearance and filed an answer on their behalf in the district court action, which was limited to defending against the relief sought by the School Board. Private counsel, retained by the Diamonds, filed a counterclaim for damages for the School Board's non-compliance with its obligation to provide a free appropriate education—both with respect to expenditures made by the parents and with respect to damage to Andrew Diamond. The counterclaim sought counsel fees and "such further relief as the Court may deem equitable and just." Neither the Public Advocate's pleading nor the counterclaim explicitly sought an award of fees for the Public Advocate.

In the district court action the laboring oar was pulled for the Diamonds by the Public Advocate. After extensive pretrial motion practice, a bench trial took place. The district court filed findings of fact and conclusions of law. The court proceeded in accordance with 20 U.S.C. § 1415(e)(2), which provides in pertinent part:

> In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

Having reviewed both the administrative records and the Department Classification Officer's decision, the district court adopted the Education Department's decision as its own. The court also reviewed the evidence developed at trial and made additional findings based upon this evidence. These findings reject both the School Board's factual contention that its Mercer Special placement of Andrew Diamond was appropriate and the School Board's legal challenge to the order requiring reimbursement of past residential placement expenses.

Turning to the counterclaim, the district court relied on *Smith v. Robinson*, 486 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) to hold that there was no legal basis for the award of either damages for injury to Andrew Diamond or of counsel fees. The Public Advocate was directed to prepare a proposed form of judgment. The judgment, as filed, makes no provision for the payment of prejudgment interest on sums ordered to be reimbursed to the Diamonds for expenses that the School District should have paid in the first place.

## III.

### The School District Appeal

The School District contends on appeal that the district court's findings of fact are clearly erroneous, and that the court applied erroneous legal standards both in determining the appropriate placement for Andrew Diamond and in ordering reimbursement.

The School District's factual challenge is predicated on the proposition that the district court should have credited the testimony of its witness, Dr. Sher E. Schwartz, a psychologist employed by Mercer Special. Dr. Schwartz testified that based on the paperwork submitted to Mercer Special she felt that Mercer Special could provide an appropriate and thorough education for Andrew Diamond. But Dr. Schwartz never saw Andrew Diamond. In contrast, the trial court heard testimony from Dr. Kenneth C. Schneider, a psychologist who observed Andrew Diamond personally in a non-residential setting at the Midland School. The court also heard the testimony of Andrew's mother, who observed his be-

---

1. The School Board alleged that the district court had jurisdiction pursuant to 20 U.S.C. § 1415(e)(1) and (2), which creates a federal right of action after state administrative procedures have been exhausted.

havior at home.[2] Dr. Schneider testified that Andrew's program required, *inter alia,* one-to-one instruction most of the time and behavior modification involving administration of consequences for at least 90% of targeted behavior. The trial court credited this testimony. It is undisputed that the program proposed by the School District at Mercer Special lacked these features. Thus the School District's challenge to the trial court's finding of fact with respect to Andrew Diamond's educational needs is completely unsupportable. See Fed.R.Civ.P. 52.

The School District's legal argument is that it is obliged by governing law to provide no more for Andrew Diamond than will be "of benefit" to him. The governing law, however, clearly imposes a higher standard.

■ New Jersey qualifies for assistance from the federal government under the Education of the Handicapped Act, 84 Stat. 175, *as amended,* 20 U.S.C. § 1041 *et seq.* (1982). It is thus required to provide a "free appropriate education" to every disabled child. 20 U.S.C. § 1412(2)(B). In *Hendrick Hudson Dist. Bd. of Educ. v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) the Supreme Court considered the Act's requirement of a free appropriate education. The free appropriate education must, said the Court, be "tailored to the unique needs of the handicapped child by means of an 'individualized education program' (IEP)." *Id.* at 181, 102 S.Ct. at 3038. According to the Court " 'the basic floor of opportunity' provided by the Act consists of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." *Id.* at 201, 102 S.Ct. at 3048. "Insofar as a State is required to provide a handicapped child with a 'free appropriate public education'," the Court continued, "we hold that it satisfies this requirement by providing personalized instruction with sufficient support

services to permit the child to benefit educationally from that instruction." *Id.* at 203, 102 S.Ct. at 3049. A personalized plan of instruction is required because the Act requires the state to educate a wide spectrum of disabled children. *Id.* at 189, 202, 102 S.Ct. at 3042, 3048. For disabled children able to attend regular classrooms in the public education system, as was the child in *Rowley,* the individualized plan "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Id.* at 204, 102 S.Ct. at 3049. Andrew Diamond has never been able to attend classes in regular classrooms. Thus the *Rowley* standard of enabling one to achieve passing marks and advance from grade to grade probably is not achievable for Andrew. But *Rowley* makes it perfectly clear that the Act requires a plan of instruction under which educational *progress* is likely. The School District's "of benefit" test is offered in defense of an educational plan under which educational regression actually occurred. Literally the School Board's plan might be conceived as conferring some benefit to Andrew in that less regression might occur under it than if Andrew Diamond had simply been left to vegetate. The Act, however, requires a plan likely to produce progress, not regression or trivial educational advancement. *Hall v. Vance County Bd. of Educ.,* 774 F.2d 629, 636 (4th Cir.1985).

■ Applying the *Rowley* standard for a free appropriate education the district court held:

> Plaintiff's plan to place Andrew at Hamilton Square will not provide him "free *appropriate* public education." (Emphasis added.) As amply demonstrated in this Court's factual findings and conclusions, plaintiff's plan will not "meet the unique needs of [this] handicapped child" and thus will not afford him "special education" as EHA requires. 20 U.S.C. §§ 1401(16), (18). Ad-

---

**2.** In addition, the district court had the benefit of the Department classification officer's deci-

sion and the administrative record.

ditionally, plaintiff's plan will not provide the "related services ... required to assist [this] handicapped child...." 20 U.S.C. § 1401(17). The inadequacies of this day school placement, include, *inter alia*, its student/teacher ratio, lack of individualized behavioral reinforcements, inadequate consequence density, inability to chart and modify simultaneously the 12–14 behaviors required in Andrew's case, lack of an adequate generalization program, and the inability to provide the constant, consistent, professionally administered behavior modification program daily, throughout all of Andrew's waking hours, that his condition requires. Only a residential program such as BRI's or May's will provide this "appropriate" education for Andrew. If, incidentially, that program does in fact "maximize" his potential, so much the better; however, this Court has not measured the inadequacy of plaintiff's plan against any maximization standard. That plan falls because of its failure to meet the express requirements of EHA itself.

*Board of Educ. of the East Windsor Regional School Dist. v. Diamond*, No. 83–2364, at 12–13 (D.N.J. Oct. 4, 1985). The district court thus ruled consistently with the Act, as interpreted by the Supreme Court in *Rowley* and by this court in *Kruelle v. New Castle County School District*, 642 F.2d 687, 693 (3d Cir.1981). As in *Kruelle*, the district court recognized that for some disabled children a residential program, rather than a day program, is the only appropriate education in view of the severity of the pupil's disability.

■ Moreover Andrew Diamond, as a resident of New Jersey, was entitled to a standard of service exceeding that set by the Education of the Handicapped Act itself. In *Geis v. Board of Education of Parsippany-Troy Hills*, 774 F.2d 575 (3d Cir.1985), we held that federal law incorporated the standard of service set forth in former N.J.A.C. 6:28–2.1, which exceeds that of the federal act. The regulation required local school boards to provide educational services according to how the student can best achieve success in learning. This regulation was operative at the time Andrew Diamond was placed in a residential program and at the date of the decision by the New Jersey Department of Education. It was amended effective June 29, 1984; however, the agency's statement in the New Jersey Register indicates no intention to lower expectations for educating disabled children. 15 N.J.R. 1982 (December 5, 1983). Besides the regulation, we noted in *Geis* that a program which assures children the fullest opportunity to develop their intellectual capacities is consistent with the New Jersey Legislature's findings in N.J.Stat.Ann. § 18A:46–19.1 (West Supp.1985). *Geis v. Board of Educ. of Parsippany-Troy Hills*, 774 F.2d at 582. Thus even if the district court had not correctly applied the Education of the Handicapped Act standard for free adequate education, the higher standard adopted by New Jersey in implementing that Act would in any event require an affirmance.

■ Relying on language in N.J.A.C. 6:28–2.2(b) that an appropriate educational program is one in "the least restrictive environment," the School District argues that Mercer Special's day program must as a matter of law be preferable to a residential program. This argument is specious. The least restrictive environment depends upon the particular disability in question. For some students a residential placement may well be the least restrictive. *See Geis v. Board of Educ. of Parsippany-Troy Hills*, 774 F.2d at 583. The district court's findings on Andrew Diamond suggest that for him a residential placement is least restrictive. "Least restrictive environment" means the least restrictive environment in which educational progress rather than educational regression can take place.

■ Finally, the School District contends that even if, prospectively, it must fund a residential placement, the New Jersey Board of Education and the district court erred in ordering reimbursement for the

expenses incurred for such placement prior to the Department's May 18, 1983 order. The district court rejected this contention, noting correctly that it is foreclosed by the decision in *Burlington School Committee v. Massachusetts Department of Education*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). In *Burlington*, the Supreme Court held that reimbursement for private placement tuition and related expenses incurred pending resolution over a dispute about placement is appropriate relief under 20 U.S.C. § 1415(e)(2).

Since not one of the arguments advanced by the School District in support of its contention that the district court should have set aside the order of the New Jersey Department of Education is meritorious, that part of the district court's order enforcing it must be affirmed.

## IV.

### The Diamonds' Appeal

The Diamonds' appeal from the dismissal of their counterclaim presents three issues, two of which are discussed in the district court opinion. These two issues concern the availability of compensatory damages for harm resulting from the School District's violation of the Education of the Handicapped Act and the availability of counsel fees. In rejecting these two claims the district court deemed itself bound by the interpretation of the Education of the Handicapped Act in *Smith v. Robinson*, 486 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984).

In *Smith*, the Supreme Court was presented with a case involving the interrelationship between the Education of the Handicapped Act and several other federal statutes. In that case the Smiths, parents of a disabled child, successfully resisted efforts by a Rhode Island school district to remove their child from a day program placement at a private institution. Because they were successful in obtaining injunctive relief, the Smiths sought attorneys' fees, relying upon section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, section 2 of the Civil Rights Attorneys Fee

Awards Act of 1976, 42 U.S.C. § 1988 and section 505(b) of the Rehabilitation Act of 1973, 29 U.S.C. § 794a(b). The Smiths urged that they had a cause of action not only under the Education of the Handicapped Act, but also under both the fourteenth amendment and the Rehabilitation Act. Thus, the Smiths contended that the 1976 Civil Rights Attorneys Fee Awards Act and the separate fee award provision in section 505(b) of the Rehabilitation Act required the award of fees, even though the Education of the Handicapped Act contained no such fee provision. The Supreme Court rejected this claim, interpreting the Education of the Handicapped Act to be the exclusive avenue through which a plaintiff might assert a claim to a free appropriate education, even if the claim involved an alleged violation of equal protection, due process, or the Rehabilitation Act. Since the Act made no explicit provision for counsel fees, the Court reasoned no such award was permitted. In so ruling, the majority rejected a construction of the several statutes at issue offered in Justice Brennan's dissenting opinion. He suggested that resolution of any perceived conflict between the Education of the Handicapped Act, the Rehabilitation Act, and the Civil Rights Act should be accomplished by requiring a plaintiff with a claim for free appropriate education to pursue relief through the administrative channels established by the Education of the Handicapped Act before seeking redress in court under either of the other statutes.

■ *Smith* was directly controlling with respect to the counterclaim for attorneys' fees in the instant case. The district court also concluded that the *Smith* analysis required rejection of the claim for compensatory damages because the Education of the Handicapped Act makes no explicit provision for compensatory damages either.

As it turned out, Justice Brennan was more attuned to the intention of Congress than were the six justices in the *Smith* majority. After the district court decision was handed down, Congress in enacting the

Handicapped Children's Protection Act of 1986, Pub.L. No. 99–372, 100 Stat. 796 (1986) on August 5, 1986, took two steps which have completely undercut the basis of the *Smith* decision. First, it amended the Education of the Handicapped Act by adding a provision for attorneys' fees.[3] The amendment applies to this case, for Congress provided:

> The amendment made by section 2 shall apply with respect to actions or proceedings brought under section 615(e) of the Education of the Handicapped Act after July 3, 1984, and actions or proceedings brought prior to July 4, 1984,

under such section which were pending on July 4, 1984.

Pub.L. No. 99–372, § 5. Since this is a proceeding brought prior to July 4, 1984, and pending on July 4, 1984, the judgment dismissing the counterclaim for counsel fees must be reversed.[4]

Since the district court, relying on *Smith,* dismissed the counterclaim as a matter of law, no record was made as to an appropriate fee award. We are advised by counsel that most of the time of private counsel has been devoted to the counterclaim, only the Public Advocate resisted the

---

**3.** The Act now provides:

> Sec. 2. Section 615(e)(4) of the Education of the Handicapped Act is amended by inserting "(A)" after the paragraph designation and by adding at the end thereof the following new subparagraphs:
>
> "(B) In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party.
>
> "(C) For the purpose of this subsection, fees awarded under this subsection shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection.
>
> "(D) No award of attorneys' fees and related costs may be made in any action or proceeding under this subsection for services performed subsequent to the time of a written offer of settlement to a parent or guardian, if—
>
> "(i) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than ten days before the proceeding begins;
>
> "(ii) the offer is not accepted within ten days; and
>
> "(iii) the court or administrative officer finds that the relief finally obtained by the parents or guardian is not more favorable to the parents or guardian than the offer of settlement.
>
> "(E) Notwithstanding the provisions of subparagraph (D), an award of attorneys' fees and related costs may be made to a parent or guardian who is the prevailing party and who was substantially justified in rejecting the settlement offer.
>
> "(F) Whenever the court finds that—
>
> "(i) the parent or guardian, during the course of the action or proceeding, unreason-

ably protracted the final resolution of the controversy;

> "(ii) the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, experience, and reputation; or
>
> "(iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding,
>
> the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this subsection.
>
> "(G) The provisions of subparagraph (F) shall not apply in any action or proceeding if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of section 615 of this Act."

**4.** The Act was clearly intended to correct *Smith's* erroneous construction of the original congressional intent. The House Committee Report specifically states:

> In sum, since 1978, it has been Congress' intent to permit parents or guardians to pursue the rights of handicapped children through EHA, section 504, and section 1983. Attorneys' fees could be awarded under section 504 (by virtue of section 505) and under section 1983 (by virtue of section 1988). Further, Congress by establishing a comprehensive scheme of procedural protections under EHA (see above) expected that in appropriate situations these procedures would be used before a parent or guardian filed a law suit.
>
> Congressional intent was ignored by the U.S. Supreme Court when, on July 5, 1984, it handed down its decision in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984).

H.R.Rep. No. 296, 99th Cong., 1st Sess. 4 (1985).

School District's effort to have the judgment against it overturned. Thus the district court should determine in appropriate proceedings on remand the fee amount that should be awarded to private counsel for work in this court, as well as in the district court. The Public Advocate made no request for fees, possibly because it was the internal policy of that public agency not to seek fee awards from other public agencies of the State of New Jersey. We were advised at oral argument that this policy is under review. We do not decide whether section 2 of Pub.L. No. 99–372 authorizes an award to the Office of Public Advocate because we hold that in this case any claim for such an award has been waived.

■ The second step taken by Congress in response to *Smith* affects the district court's dismissal of the counterclaim for compensatory damages. Recall that the majority in *Smith* interpreted the Education of the Handicapped Act to be the exclusive avenue through which persons covered by it could assert claims for free appropriate education. The majority thus rejected the interpretation proposed by Justice Brennan that claims under section 1983 and under section 504 of the Rehabilitation Act survived and could be filed after exhaustion of the administrative remedies required by the Education of the Handicapped Act. In section 3 of Pub.L. No. 99–372 Congress overruled the *Smith* majority's interpretation, by providing:

Section 615 of the Education of the Handicapped Act is amended by adding at the end thereof the following new subsection:

"(f) Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (b)(2) and (c) shall be exhausted to the same extent as would be

required had the action been brought under this part".

Thus Congress explicitly adopted the reconciliation of the several statutes proposed by the *Smith* dissenters.

The School District argues that section 3 of Pub.L. No. 99–372 should not be applied to this case. It has long been settled, however, that appellate courts are required to apply the law announced in subsequently enacted federal statutes. *Carpenter v. Wabash Ry. Co.*, 309 U.S. 23, 27, 60 S.Ct. 416, 418, 84 L.Ed. 558 (1939); *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 102 (1801). The School District would have us disregard this settled rule of law by discerning in Pub.L. No. 99–372 a congressional intent not to apply section 3 to cases pending on appeal. The School District relies on the provision in section 5 of Pub.L. No. 99–372, quoted above, dealing explicitly with the applicability of the fee award provision to pending cases to determine congressional intent. From this provision, the School District reasons, we should infer that silence with respect to the same subject in section 3 means an intention that it be applied only to subsequently filed lawsuits. We cannot accept this attenuated line of reasoning. Section 2 of Pub.L. No. 99–372 added an entirely new fee award provision to the Education of the Handicapped Act. Therefore, it was necessary for Congress to address specifically the application of that new provision to pending cases because many cases under the Education of the Handicapped Act might be brought under that Act alone. Section 3 of Pub.L. No. 99–372 deals with an entirely separate issue—the misinterpretation in *Smith* of the intention of Congress with respect to the preemptive effect of the Education for the Handicapped Act. Thus section 5, which deals with the application of section 2 to pending cases, tells us nothing about congressional intention as to the application of section 3 to pending cases. Since *Smith* interpreted legislation already in place and section 3 of Pub.L. No. 99–372 overruled that interpretation, the only congressional intention that we can discern is that the legislation long in place

be interpreted as the dissenters in *Smith* proposed. *See Thomas v. Carnegie-Illinois Steel Corp.*, 174 F.2d 711 (3d Cir.1949) (Supreme Court's misinterpretation of Fair Labor Standards Act, corrected by Portal-to-Portal Act of 1947; latter applied to pending cases). Thus we hold that section 3 of Pub.L. No. 99–372 applies to the Diamonds' counterclaim.

Because the district court dismissed the counterclaim as legally insufficient, we have neither a record nor findings of fact which would permit us to dispose of the damage claim at this stage. The Diamonds allege that their son has been damaged by the adamant failure of the School District to provide him with a free appropriate education. They rely upon 42 U.S.C. § 1983. Applying the pleading standard of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), we cannot say that they could not prove a set of facts upon which compensatory damage relief could be granted for violation of the Constitution or the laws of the United States. We hold no more at this stage of the case.[5]

The Diamonds also contend that the district court erred in neglecting to include in the final judgment an award of prejudgment interest on the liquidated amounts they have been awarded as reimbursement of expenses for their son's residential placement. The School District, without addressing the merits of that claim, counters that the Diamonds waived it in the trial court. Since a remand on the counterclaim is required for the reasons already set forth, we conclude that the prejudgment interest claim should be left open for consideration by the district court in the first instance.

## V.

### Conclusion

In the School District's appeal we will affirm the judgment of the district court insofar as it dismisses the School District's complaint, orders the School District to comply with the decision of the New Jersey Department of Education dated May 18, 1983, orders the School District to pay the residential and educational expenses of Andrew Diamond at the May Institute (where Andrew Diamond is now placed), orders the School District to reimburse Andrew Diamond's parents for expenses incurred to date for his residential placement, orders the School District to redraft Andrew Diamond's Individualized Education Program, and orders the School District to submit to the New Jersey Department of Education the necessary documents for Andrew Diamond's continued residential placement at the May Institute. In the Diamonds' appeal we will reverse the order dismissing the counterclaim and remand for further proceedings consistent with this opinion.

---

**5.** Judge Becker joins in this portion of the opinion on the understanding that the panel has reserved judgment on the question, which was not argued or adequately briefed, of whether there is a private right of action for damages under section 504 of the Rehabilitation Act under the circumstances of this case.