**Barbara de MORA, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 20, 2000.

Decided March 1, 2001.

Barbara de Mora, petitioner, pro se.

Daniel M. Fellin, Harrisburg, for respondent.

Robert O. Baldi, New Hope, for intervenor, Bucks County Dept. of Mental Health/Mental Retardation.

Before McGINLEY and FRIEDMAN, Judges, MIRARCHI, Senior Judge.

FRIEDMAN, Judge.

Barbara de Mora (Petitioner) petitions for review of the December 31, 1999 order of a hearing officer, which determined that the Individualized Family Service Plan (IFSP) developed for Petitioner's daughter, Isabella, is "appropriate" under 34 C.F.R. § 303.344,[1] and, thus, Isabella is not entitled to additional hours of therapy or Lovaas-based discrete trial training.[2] We reverse and remand.

Isabella was born on April 11, 1997. (Findings of Fact, No. 2.) As an infant, Isabella was identified as having developmental delays.[3] (Hearing Officer's op. at 5.) Before Isabella's family moved to Bucks County, Pennsylvania, in July 1999, Petitioner contacted the Bucks County Office of Mental Health and Mental Retardation (county) regarding early intervention services for Isabella.[4] (Hearing Officer's op. at 5.) As a result, an IFSP was developed for Isabella on July 1,

---

1. Subsection (d)(1) of the federal regulation at 34 C.F.R. § 303.344 states that an "IFSP must include a statement of the specific early intervention services necessary to meet the unique needs of the child and the family to achieve the outcomes identified in paragraph (c) of this section...." 34 C.F.R. § 303.344(d)(1) (2000).

2. A Lovaas-based program involves forty hours per week of "discrete trial drilling." (See Hearing Officer's op. at 8.)

3. Isabella has cerebral palsy, severe hearing loss in the left ear and mild to moderate hearing loss in the right ear. (S.R.R. at 94b.) Isabella has a twin sister, Kristina, who also receives services for developmental delays. (S.R.R. at 146b–48b.)

4. The county provides early intervention services for infants and toddlers under three years of age. (Hearing Officer's op. at 4.)

1999. (Findings of Fact, No. 3.) The IFSP was modified several times since July 1, 1999, ultimately providing Isabella with 24.25 hours per week of physical therapy, speech therapy, occupational therapy and special instruction. (Hearing Officer's op. at 6; Findings of Fact, No. 4.)

In September 1999, Petitioner requested that Isabella's IFSP include additional hours for her therapy, and Petitioner expressed a preference for the Lovaas methodology of early intervention training. (Hearing Officer's op. at 6; Findings of Fact, No. 6.) However, the county refused to provide more hours of therapy or a Lovaas program. Petitioner was convinced that the Lovaas methodology would benefit her daughter, and, as a result, Petitioner hired a Lovaas-trained therapist to provide a private home program for Isabella from October 8, 1999 through December 14, 1999. (*See* Hearing Officer's op. at 8; S.R.R. at 118b.)

Subsequently, Petitioner requested a due process hearing, and the matter was assigned to a hearing officer. (Findings of Fact, Nos. 7–9.) The hearing officer agreed to hold a paper hearing, i.e., without live testimony, and the parties submitted various documents in support of their positions. (Hearing Officer's op. at 4; Findings of Fact, Nos. 10–11.)

The hearing officer determined that the IFSP was "appropriate" and, therefore, Isabella was not entitled to additional hours of therapy or Lovaas-based training. Because of this determination, the hearing officer declined to address whether Petitioner is entitled to reimbursement for her expenses in hiring someone to provide Lovaas training. Petitioner now appeals to this court.[5]

Petitioner argues that the hearing officer erred in concluding that the IFSP was "appropriate" for Isabella's individual needs. In doing so, Petitioner presents this court with an issue of first impression. Although this court has examined whether individualized education programs (IEP) were "appropriate" for students under Part B of the Individuals with Disabilities Education Act (IDEA),[6] 20 U.S.C. §§ 1400–1485, this court has never addressed whether an IFSP was "appropriate" for an infant or toddler under Part C of the IDEA.[7] Having considered the matter in this case, we agree that the hearing officer erred in concluding that the IFSP was "appropriate" for Isabella.

An IFSP must include "a statement of the specific early intervention services [8] necessary to meet the unique needs of the child and the family to achieve the outcomes identified....." [9] 34 C.F.R.

5. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

6. *See, e.g., Cumberland Valley School District v. Lynn T.,* 725 A.2d 215 (Pa.Cmwlth.1999), *aff'd sub nom. In re Residence Hearing Before the Board of School Directors, Cumberland Valley School District,* 560 Pa. 366, 744 A.2d 1272 (2000); *Big Beaver Falls Area School District v. Jackson By and Through Nesmith,* 150 Pa.Cmwlth. 268, 615 A.2d 910 (1992), *appeal denied,* 535 Pa. 676, 636 A.2d 635 (1993).

7. Part B of the IDEA governs children from the ages of three to twenty; Part C of the

IDEA governs children under three years of age. *See Wagner v. Short,* 63 F.Supp.2d 672 (D.Md.1999).

8. The phrase "early intervention services" refers to developmental services "designed to meet the developmental needs of an infant or toddler with a disability...." Section 1432(4)(C) of the IDEA, 20 U.S.C. § 1432(4)(C).

9. The outcomes identified in the July 1, 1999 IFSP are as follows: (1) Isabella will walk with better balance and less of a wide gait and stand in one place and will improve perceptual motor skills, visual tracking skills and problem solving skills; (2) Isabella will be able to imitate, pairing language and motor planning and will understand what is said and follow directions; (3) Isabella will talk so that she can let others know her thoughts,

§ 303.344(d)(1) (2000). Through the IFSP process, the county is responsible for providing "appropriate" early intervention services to all handicapped infants, toddlers and their families. Sections 301 and 303(a) of the Early Intervention Services System Act, Act of December 19, 1990, P.L. 1372, 11 P.S. §§ 875–301 & 875–303(a).

■ For a county to meet its responsibility, the IFSP must provide services that are "likely to produce progress, not regression or trivial ... advancement." *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 183 (3d Cir. 1988) (quoting *Board of Education v. Diamond*, 808 F.2d 987, 991 (3d Cir.1986)). Where, as here, the IFSP provides for multiple types of developmental services, i.e., speech therapy, occupational therapy, physical therapy and special instruction, each of the services must be likely to produce meaningful progress. *Id.*

■ The assessment of a child's unique needs and of the services "appropriate" to meet those needs is an ongoing process. 34 C.F.R. § 303.322(b)(2). A review of progress made pursuant to an IFSP must be conducted every six months, or more frequently when conditions warrant or when a family requests it. 34 C.F.R. § 303.342(b)(1). Thus, to determine whether Isabella's IFSP is "appropriate" for her unique needs, we must examine whether the record shows that Isabella has made progress as a result of the services provided by her IFSP.

The hearing officer states that the county presented evidence of Isabella's progress from the services provided in her IFSP "before *and along with* Lovaas." [10] (Hearing Officer's op. at 7) (emphasis added). However, evidence that Isabella made progress as of October 8, 1999, when she began receiving private Lovaas training *along with* the IFSP services, does *not* tend to show that Isabella made meaningful progress *solely* from the IFSP services.[11] Therefore, in addressing whether the hearing officer erred in concluding that the IFSP was "appropriate" for Isabella, we will consider only that evidence relating to the period of time from July 1, 1999 to October 7, 1999, *before* Isabella began Lovaas training.

Certainly, the county presented substantial evidence to show that Isabella was making meaningful progress from the physical therapy that she was receiving under the IFSP. The county submitted a September 30, 1999 evaluation by the physical therapist, Michele R. Barbon, which states: "Isabella has made gains in stair climbing, walking board traversing and postural control in sitting and standing. Her greatest gain has been in her tolerance to handling and facilitation especially on unstable surfaces." (S.R.R. at 352b.) Such progress is related to her goal of walking with better balance and standing in one place. (S.R.R. at 95b.)

needs and ideas and will understand what is being said and follow directions; (4) Isabella will improve her self-help skills, including undressing, finger and spoon feeding, washing face and accepting new textures, so she can become independent; (5) Isabella will form relationships with others and interact more with her peers; and (6) Isabella will be "there" and not lost and will know that there is a world out there. (*See* S.R.R. at 91b–104b.)

10. In support of his statement, the hearing officer cites to County Exhibit A5; however, this exhibit is nothing more than a recitation of the services rendered to Isabella under the IFSP. It is *not* evidence of Isabella's progress.

To the extent that the hearing officer believes that IFSP services are "appropriate" if they are merely *designed* to achieve the outcomes identified in the IFSP, we reject that notion. *Cf. Adams v. State*, 195 F.3d 1141 (9th Cir. 1999) (stating that, instead of asking whether the IFSP was adequate in light of the child's progress, a court should ask whether the IFSP was appropriately designed and implemented so as to convey a meaningful benefit).

11. Absent expert testimony explaining how to distinguish between progress resulting from Lovaas training and progress resulting from the IFSP services, a reasonable mind could not determine whether the child made progress solely due to the IFSP services.

However, the county did *not* present substantial evidence to show that Isabella was making meaningful progress from the occupational therapy, speech therapy and special instruction provided to her under the IFSP. In fact, the county submitted *no* progress reports relating to Isabella's occupational therapy,[12] and, although the county offered several progress reports from one of the speech therapists, Katharine Ferguson,[13] those reports cover periods of time when Isabella was also receiving Lovaas training. (S.R.R. at 370b–71b, 373b, 374b.) As for the special instruction, the county presented a September 1999 progress summary by Scott Helsinger; however, it is not possible to determine from the document and its attachments whether any progress reported therein is related to Isabella's IFSP goals.[14] (S.R.R. at 254b–55b.)

■ It is clear, then, that, except for the physical therapy, the county failed to prove that the IFSP services provided to Isabella from July 1, 1999 to October 7, 1999 produced meaningful progress towards the IFSP goals. Thus, the hearing officer erred in concluding that the IFSP was, in every respect, "appropriate" for Isabella.

■ Having made that determination, we must decide on a proper remedy for Petitioner. Although Isabella is no longer under three years of age and, thus, is no longer eligible for services under Part C of the IDEA, the issue of Petitioner's entitlement to reimbursement for expenses in providing Isabella with private Lovaas training is not moot.

■ Section 1439(a)(1) of the IDEA, 20 U.S.C. § 1439, states that, when a county fails to provide adequate services for a child, this court "shall grant such relief as the court determines is appropriate." Where a family has provided private services to supplement inadequate IFSP services and the child makes progress toward her goals as a result of the combination of services, it is appropriate to reimburse the family for the supplemental services.

■ Here, the hearing officer found that Isabella made progress toward her IFSP goals as a result of the *combination* of IFSP services and Lovaas training. (Hearing Officer's op. at 7.) This finding is supported by substantial evidence in the record.[15] Thus, Petitioner is entitled to reimbursement for her expenses in providing Isabella with private Lovaas training for the period from October 8, 1999 to

12. We note that the record contains an *unsigned* report with a brief summary of the occupational therapy services provided to Isabella; however, the summary does not indicate whether the therapy has produced any progress. (S.R.R. at 358b, 359b.)

13. The name of the other speech therapist is Janet DeTroia. (S.R.R. at 114b.) The record contains an *unsigned* report with a speech therapist summary, and Janet DeTroia's name is typed at the end of this report along with the names of three other individuals. (S.R.R. at 359b.) However, unless Janet DeTroia has signed the document, we cannot conclude that she endorses the substance of the speech therapist summary.

14. The summary states that: (1) Helsinger collected data for thirty-eight behaviors; (2) Isabella made "good progress" on nine behaviors; (3) Isabella made "fair progress" on eleven behaviors; (4) Isabella made "poor progress" on eight behaviors; and (5) Helsinger could not determine whether Isabella made any progress on the remaining ten behaviors. (S.R.R. at 254b–55b.) The behaviors are identified in graphs that accompany the summary. However, some of the behaviors are difficult to discern from the brief description given in the graph headings, and the meaning of the y-axis labels on some graphs is not clear. Moreover, without expert testimony to interpret the points plotted on the graphs, it is not possible to determine the nature of the progress made by Isabella and whether it relates to the IFSP's goals.

15. Speech therapist Lisa Parker stated that there was "noticeable improvement" in Isabella's progress during the week of October 8 to October 14, 1999, when Isabella began Lovaas training. (S.R.R. at 353b, 375b, 376b.) The record also contains a videotape showing Isabella's positive response to Lovaas training and practically no response at all to certain IFSP services. (*See* videotape.)

December 14, 1999.[16] Because the hearing officer declined to address the issue, we must remand this case so that the hearing officer can make findings relating to Petitioner's actual costs in that regard.[17]

Accordingly, we reverse and remand.[18]

## ORDER

AND NOW, this 1st day of March, 2001, the order of the hearing officer, dated December 31, 1999, is reversed, and this case is remanded to the hearing officer as set forth in the foregoing opinion.

Jurisdiction relinquished.

16. Because the pleading in this matter only addressed this period of time, we are unable to address whether Petitioner is entitled to reimbursement for expenses in providing Lovaas training between December 15, 1999 and April 10, 2000, the date that Isabella became ineligible for Part C services.

17. On remand, the hearing officer shall allow Petitioner to submit a proper bill of costs.

18. Petitioner requests reimbursement for expenses incurred in preparing for the due process hearing before the hearing officer. (Petitioner's brief at 10.) However, Petitioner failed to make this request during the prior proceeding. Therefore, the matter is waived. See Pa. R.A.P. 1551(a) (stating that no question shall be heard or considered by this court which was not raised before the government unit).