**BUCKS COUNTY DEPARTMENT OF MENTAL HEALTH/MENTAL RETARDATION, Plaintiff,**

v.

**Barbara DE MORA, Defendant.**

**Civil Action No. 01–3254.**

United States District Court, E.D. Pennsylvania.

Oct. 3, 2002.

Robert O. Baldi, New Hope, PA, for Plaintiff.

Doris M. Leisch, Dept. of Public Welfare, Philadelphia, PA, Daniel Fellin, Dept. of Public Welfare, Harrisburg, PA, Gary S. Mayerson, Amanda L. Oren, Mayerson & Associates, New York, NY, Richard Hale Pratt, Pratt, Brett & Luce, P.C., Doylestown, PA, for Defendant.

## MEMORANDUM AND ORDER

SCHILLER, District Judge.

The multifaceted Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 (2002) *et seq,* mandates that in return for acceptance of certain federal funding states must provide a variety of services to children and students under the age of twenty with disabilities. At issue here is Part C of the IDEA, 20 U.S.C. § 1431 *et seq,* which governs the provision of "early intervention services" to developmentally-challenged infants and toddlers. This action is an appeal from a state administrative hearing officer's decision in favor of Barbara de Mora under Part C of the IDEA. In its appeal, Bucks County Office of Mental Health and Mental Retardation ("Bucks County") challenges that

portion of the hearing officer's decision that ordered reimbursement to Ms. de Mora for the time she spent providing early intervention services to her daughter, I.D.[1] Whether, under Part C of the IDEA, parents may be reimbursed for early intervention services they personally provide to their children is one of first impression in this circuit.[2]

I find that the IDEA does not preclude a parent (Barbara de Mora) from seeking and obtaining reimbursement for her time expended in providing early intervention services for her child under certain circumstances. In addition, I find that the fact that Ms. de Mora had not obtained formal certification for the training she provided I.D. does not preclude reimbursement. The parties have filed cross-motions for summary judgment, and for the reasons set forth below, I grant Ms. de Mora's motion and affirm the hearing officer's decision.

## I. FACTUAL BACKGROUND

I.D., who was born in April 1997, has been diagnosed as having cerebral palsy and deafness. *See de Mora v. Dep't of Pub. Welfare,* 768 A.2d 904, 905, 906 n. 3 (Pa.Commw.Ct.2001). While an infant, I.D. was also identified as having developmental delays, making her eligible for early intervention services. *See id.* at 906. In July 1999, Bucks County developed an Individualized Family Service Plan ("IFSP") for I.D. that included physical therapy, speech therapy, occupational therapy, and other special instruction. *See id.*[3] Not satisfied with the IFSP, Ms. de Mora requested that Bucks County amend I.D.'s IFSP to include additional therapeutic services and expressed a preference for the Lovaas methodology of early intervention training. *See id.* Despite Ms. de Mora's requests, Bucks County declined to incorporate additional therapy or a Lovaas-based program. *See id.*[4]

Without the support of Bucks County, Ms. de Mora hired Patricia Laudon, an experienced Lovaas therapist, to provide home-based therapy to I.D. *See id.* Because Ms. Laudon's time was limited and Ms. de Mora was unable to find a therapist other than Ms. Laudon to administer the Lovaas therapy, Ms. de Mora requested that Ms. Laudon train her in the Lovaas methodology. (Def.'s Mot. for Summ. J., Ex. 10 (de Mora Decl.).) Thus, in conjunction with I.D.'s program, Ms. Laudon trained Ms. de Mora to perform the Lovaas techniques herself. (de Mora Dep. at 39.) Having received this instruction, Ms. de Mora spent a substantial amount of time providing I.D. with therapy.

Furthermore, after Bucks County refused to amend I.D.'s program to include Lovaas therapy, Ms. de Mora commenced administrative proceedings against the county pursuant to 20 U.S.C. § 1439. In an opinion dated January 4, 2000,[5] Hearing Officer David Lee found that Bucks County's IFSP was appropriate. On appeal,

1. The parties agreed upon the designation "I.D."

2. Moreover, the parties have not cited, and the Court's own research has not uncovered, any cases addressing this issue.

3. The IFSP was revised several times after it went into effect on July 1, 1999.

4. Developed by Dr. Ivar Lovaas, Lovaas training is an approach to educating developmentally-challenged children which involves breaking down activities into discrete tasks and providing positive reinforcements for the child.

5. The January 4, 2000 opinion of Hearing Officer David Lee issued after the matter was remanded by the Commonwealth Court is Exhibit 3 to Plaintiff's Motion for Summary Judgment.

however, the Pennsylvania Commonwealth Court reversed the hearing officer's finding and remanded the case with instructions to reimburse Ms. de Mora "for her expenses in providing [I.D.] with private Lovaas training for the period from October 8, 1999 to December 14, 1999."[6] *de Mora v. Dep't of Pub. Welfare*, 768 A.2d 904, 908–09 (Pa.Commw.Ct.2001).

Upon remand,[7] the hearing officer calculated Ms. de Mora's expenses to be $10,362.00. That total encompassed two categories of charges: (1) $3,520.00 to reimburse Ms. de Mora for Ms. Laudon's eighty-eight hours of Lovaas-based consultation, training and direct implementation, and (2) $6,842.00 to reimburse Ms. de Mora for her own time "directly related to the Lovaas-based program." Hearing Officer's Op. at 2–4 (June 3, 2001). Regarding reimbursement to Ms. de Mora for her own time, the hearing officer found that Ms. de Mora had provided the "training herself instead of paying a provider." *See id.* at 4. The hearing officer determined the amount of the award by multiplying the 311 hours expended by a rate of $22 per hour he determined to be reasonable in light of market rates. *See id.* at 4–5.

Bucks County then filed a complaint in the nature of an appeal in this Court, solely challenging the hearing officer's $6,842.00 award to reimburse Ms. de Mora for her own time. The parties have now filed cross-motions for summary judgment.

## II. DISCUSSION

### A. Standard of Review

Under the IDEA, a reviewing court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. *See* 20 U.S.C. § 1415(i)(2)(B). Thus, the reviewing court should not adopt the traditional summary judgment standard of review. *See Heather S. v. State of Wis.*, 125 F.3d 1045, 1052 (7th Cir.1997).

Instead, reviewing courts should apply a "modified" de novo standard of review. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). In doing so, courts must form their own opinions of the record, evaluating each element of the hearing officer's ruling. *See Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997). District courts have discretion to determine how much deference to accord to the administrative proceeding. *See Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1219 (3d Cir.1993).

### B. Broad Scope of Relief Available Under the IDEA

Under the IDEA, when a state or local government agency fails to provide adequate services for a child, the court "shall grant such relief as the court determines is appropriate" 20 U.S.C. § 1439(a)(1). The Supreme Court provided addressed the meaning of "appropriate" relief in *School Committee of Burlington v. Massachusetts Department of Education*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). In particular, the Court explained: "The statute directs the court to 'grant such relief as [it] determines is appropriate.' The

---

**6.** The Commonwealth Court addressed only the period from October 8, 1999 to December 14, 1999 "[b]ecause the pleadings in this matter only addressed this period of time." *de Mora*, 768 A.2d at 909, n. 16.

**7.** The June 3, 2001 opinion of Hearing Officer David Lee, issued after the matter was remanded by the Commonwealth Court, is Exhibit 6 to Plaintiff's Motion for Summary Judgment.

ordinary meaning of these words confers broad discretion on the court, and the type of relief is not further specified, except that it must be 'appropriate.'" *Burlington,* 471 U.S. at 369, 105 S.Ct. 1996.[8] As the Third Circuit has further explained: "[W]e discern nothing in the text or history suggesting that relief under IDEA is limited in any way, and certainly no 'clear direction' sufficient to rebut the presumption that all relief is available. The expansive language of § 1415(f) . . . contains no restrictions on forms of relief." *W.B. v. Matula,* 67 F.3d 484, 494 (3d Cir.1995). Thus, "the power of the Court to fashion an appropriate remedy for an IDEA violation is quite broad." *O.F. v. Chester Upland Sch. Dist.,* Civ. A. No. 00–779, 2002 U.S. Dist. LEXIS 17343, at *18 (E.D.Pa. Sept. 9, 2002) (citing *Matula,* 67 F.3d at 494–95).

## C. Reimbursement for Time Ms. de Mora Expended

A number of courts have awarded financial reimbursement to parents who have secured private services for their children when states or local educational agencies have failed to satisfy the IDEA's requirements. *See, e.g., Florence County Sch. Dist. Four v. Carter,* 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993) (holding reimbursement to parents proper remedy when

child's parents unilaterally placed child in private school in order to receive appropriate education). Moreover, reimbursement has been awarded to parents who, like Ms. de Mora, personally provide services which have been denied to their child. In *Hurry v. Jones,* 734 F.2d 879 (1st Cir.1984), a quadriplegic student with mental retardation needed special transportation to and from school.[9] Because the school district was unable to provide this transportation, the student's father drove his son to school. *See id.* at 881–82. The First Circuit found that the student's father was entitled not only to reimbursement for his out-of-pocket expenses, but to reimbursement for his own time and effort as well. *See id.* at 884.

Nonetheless, Bucks County argues that public policy considerations support a different outcome in the instant case. Specifically, Bucks County contends that under Part C of the IDEA parents are an important component of any early intervention program, whereas the role of parents is more limited under Part B of the IDEA. Even if Bucks County is correct on this point, it overlooks the fact that Ms. de Mora, in providing the Lovaas training, acted well beyond the parental role contemplated under Part C.[10]

Bucks County also contends that Ms. de Mora is not entitled to reimbursement for

---

**8.** Although the *Burlington* decision addresses the Education for All Handicapped Children Act, the IDEA's predecessor, the Court's reasoning nonetheless bears on cases under the IDEA. *See, e.g., Carlisle Area Sch. Dist. v. Scott P.,* 62 F.3d 520, 536 (3d Cir.1995) (discussing *Burlington* decision in case arising under IDEA).

**9.** Under the IDEA, students are entitled to transportation needed to enable them to receive special education. *See, e.g., Rairdan M. v. Solanco Sch. Dist.,* Civ. A. No. 97–5864, 1998 WL 401637, 1998 U.S. Dist LEXIS 10352 (E.D.Pa. July 13, 1998).

**10.** In addition, I note that several cases cited by Bucks County are inapposite. First, *Woodside v. Philadelphia Board of Education,* 248 F.3d 129 (3d Cir.2001), is distinguishable from the case at bar because it involved an award of attorney's fees. As the Third Circuit noted, "'fee-shifting statutes are meant to encourage the effective prosecution of meritorious claims, and that they seek to achieve this purpose by encouraging parties to obtain independent representation.'" 248 F.3d at 131 (quoting *Doe v. Bd. of Educ. of Baltimore County,* 165 F.3d 260, 263 (4th Cir.1998)). Thus, policy considerations were implicated in *Woodside* that are not present here. Second, *B.K. v.Toms River Board of Education,*

her time because she allegedly was not properly qualified to provide early intervention services. In this regard, Bucks Count points to a federal regulation providing that early intervention services must be provided by "qualified" personnel. *See* 34 C.F.R. § 303.12(a)(3)(i)-(iii) (2002). Bucks County also notes that "qualified means that a person has met state approved or recognized certification, licensing, or other comparable requirements that apply to the area in which the person is providing early intervention services." 34 C.F.R. § 303.22.

For several reasons, I disagree with Bucks County's contention that these regulations bar reimbursement to Ms. de Mora. First, Supreme Court precedent suggests that parents should not be constrained to looking to state-sanctioned services when a state or local government fails to meet the IDEA's requirements. *See Florence County*, 510 U.S. at 14, 114 S.Ct. 361 ("Nor do we believe that reimbursement is necessarily barred by a private school's failure to meet state education standards.") Second, Bucks County's certification argument cannot be squared with its position with respect to Ms. Laudon. Bucks County has not appealed the award to Ms. de Mora for reimbursement for money paid to Ms. Laudon. However, Ms. Laudon has no certification or professional licenses relevant to the services she provided to I.D. (Laudon Dep. at 51–52), and, as such, is no different from Ms. de Mora in this regard. Lastly, Bucks County's

suggestion that in order to be entitled to reimbursement Ms. de Mora must have obtained certification from a national organization, the Association of Behavioral Analysts (Pls. Mot. for Summ. J., Ex. 9 at 3 (Helsinger Decl.)), is unsupportable. Requiring Ms. de Mora to complete graduate-level coursework and pass examinations—during the few months I.D. remained eligible for early intervention services—would have been unduly burdensome, if not contrary to I.D.'s best interests.

## III. CONCLUSION

For the foregoing reasons, I affirm the hearing officer's decision, and grant Defendant Barbara de Mora's motion for summary judgment.[11]

---

998 F.Supp. 462 (D.N.J.1998), as cited by Bucks County, should be distinguished from the case at bar because in that case there was no adjudicative finding that the local governmental agency had violated the IDEA. *See* 998 F.Supp. at 467–68.

**11.** Bucks County requested the Court's guidance regarding when a parent may be reimbursed under Part C of the IDEA. Consequently, I note that the facts of this case limit

the applicability of this case. In this case, there has been (1) an underlying failure on the part of the local agency to provide appropriate early intervention services (2) that caused the child's parents to secure an appropriate and efficacious early intervention program later found to be appropriate, (3) in which a parent received training and then effectuated the program.